IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DENISE L. ZARICOR-RITCHIE, )
)
       Plaintiff, )
)
vs. ) Case No. 08-CV-075-TLW
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
       Defendant. )

**OPINION AND ORDER**

Plaintiff Denise L. Zaricor-Ritchie seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3).[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 6]. Any appeal of this decision will be directly to the Tenth Circuit.

**Introduction**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment

---

[1] Plaintiff's brief includes endnotes rather than footnotes. Plaintiff's counsel is directed to use footnotes in all future briefing.

1

and the severity of the impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). The Court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," but the Court will not reweigh the evidence or substitute its judgment for that of the ALJ. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

**Issues**

Plaintiff argues that the ALJ's Decision should be reversed for the following four reasons:

1. Plaintiff meets or equals the fourth domain requirements of the paragraph B section for a mental listing;
2. The ALJ failed to perform a proper evaluation of the medical source evidence;
3. The ALJ failed to perform a proper credibility determination; and
4. The ALJ failed to make a proper determination at step 4 of the sequential evaluation process.

(Dkt. # 28, 3-4).

**Discussion**

Plaintiff first argues that she "meets or equals the fourth domain requirements of the paragraph B section for a mental listing." (Dkt. # 28 at 4). Plaintiff correctly states that "[t]he fourth domain of Paragraph B of the mental health listings is [in part] a functional limitation concerning repeated episodes of decompensation, each of extended duration." Id. The listing defines "repeated episodes of decompensation, each of extended duration" as follows:

> [T]hree episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. § 404, subpt. P, App. 1. Plaintiff argues that evidence of four attempted suicides in two months is alone sufficient to meet the listing. Plaintiff is incorrect.

The only evidence cited by plaintiff is a "CAR ASSESSMENT RECORD," which states that plaintiff "reports 4 suicide attempts w/in the past 2 months." (Dkt. # 28 at 4) (citing R. 240). These attempted suicides resulted in hospitalizations of one day in March, 2006, and three days in April, 2006. (R. 240). The only other evidence of plaintiff's suicide attempts are contained on MEDICATION CLINIC STAFFING forms completed by staff at Edwin Fair Community

Mental Health Center. (R. 229-58). These forms merely note that plaintiff has a "history of suicide attempts." Id. Plaintiff's argument initially fails because even assuming that each of plaintiff's reported suicide attempts were episodes of decompensation, there is no evidence that the episodes were of extended duration as defined by the listing. Moreover, the Tenth Circuit, in a factually similar situation, found that prior suicide attempts alone were insufficient to establish episodes of decompensation:

> Ms. Stokes argues the evidence of her one or two previous suicide attempts shows repeated episodes of decompensation. In his disability evaluation, Dr. Hickman noted that Ms. Stokes reported two suicide attempts that had occurred "a few years ago." In her testimony before the ALJ, Ms. Stokes testified that she had previously tried to end her life by overdosing on medication after being fired from her job. She did not specify exactly how many attempts she had made, simply saying "I had taken ... a bunch of my pills." She testified that she thought the attempts occurred in 2001, which would be prior to the claimed date of disability, but she could not remember the exact year. She presented no evidence of the type or quantity of medications she took and, although she testified she saw a psychiatrist after the attempts, she gave no specifics as to her treatment and provided no treatment records. No reasonable factfinder could have found the criteria of repeated episodes of decompensation to have been met from such cursory references to previous suicide attempts.

Stokes v. Astrue, 274 F. App'x. 675, 681 (10th Cir. 2008). The only difference between Stokes and this case is that plaintiff has provided the dates of her alleged suicide attempts and some medical records (primarily consisting of her own reports to counselors) related to her suicide attempts. As in Stokes, this information could not have led a reasonable factfinder to find the criteria of repeated episodes of decompensation to have been met. Finally, the ALJ specifically "considered whether the 'paragraph B' criteria [we]re satisfied" and concluded that plaintiff had not had any episodes of decompensation, much less extended episodes. (R. 20, 304-05). This finding was not in error.

Second, plaintiff alleges that the ALJ failed to perform a proper analysis of the medical source evidence, specifically asserting that "[t]he ALJ failed to note the correct standard for

4

evaluation of 'other source' informants." (Dkt. # 28 at 6-7). The "other source" here is plaintiff's counselor at Edwin Fair Community Mental Health. Id. Plaintiff's counselor completed a Mental Residual Functional Capacity Assessment, which the ALJ specifically referenced but found was "inconsistent with the evidence of record, as well as the counselor's own treatment notes." (R. 23-24, 308). Plaintiff argues that the ALJ ". . . is supposed to evaluate the counselor's opinion in accordance with all of the proper factors." (Dkt. # 28 at 6). Plaintiff identifies the following six factors: (1) The length of treatment, the treatment relationship, and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree by which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) the specialty of the author of the opinion; [and] (6) any other factors noted by the ALJ which support or detract from the opinion.

In support of her argument, plaintiff cites three Tenth Circuit cases and a regulation: Swanson v. Barnhardt, 190 F. App'x 655, 657 (10th Cir. 2006); Bowman v. Astrue, 511 F.3d 1270, 1274-75 (10th Cir. 2006); and Goatcher v. U. S. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995); 20 CFR § 404.1527. The Court is unsure why plaintiff cites Swanson on this issue, since it only addresses an ALJ's credibility analysis. The factors and the regulation cited by plaintiff are taken directly from page 290 of the Goatcher decision. But the analysis in Goatcher involved the opinion of a treating physician (an "acceptable medical source" under the regulations), which is not the case here. Plaintiff's counselor is not a physician. And, although the factors set forth above may be used in the consideration of "other sources," the standard is different than the standard considered by the Tenth Circuit in Goatcher.

5

In fact, the Tenth Circuit, in <u>Bowman</u>, addressed this issue, with respect to "other source" informants, in detail:

> Ms. Bowman contends that the ALJ's evaluation of Nurse Hancik's opinion was legally deficient because he failed to comply with the requirements of SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006), a Social Security Ruling that was published by the Commissioner almost a year and a half after the ALJ issued his decision in this case. According to Ms. Bowman:
>
>> SSR 06-3p requires ALJs to evaluate opinions by medical providers who do not qualify as 'acceptable medical sources' under the factors cited in 20 C.F.R. § 416.927(d).... It also requires ALJs to explain the weight given to opinions by those sources or provide a discussion of the evidence in the decision which allows a reviewer to follow the ALJ's reasoning when such opinions may have an effect on the outcome of the case.... Here, while acknowledging Nurse Hancik's opinions, the ALJ did not explain the weight he attached to these opinions nor explain why he rejected them. As such, since SSR 06-3p should have been applied retroactively due to the fact that it merely clarified existing law, ... the ALJ's failure to follow its procedures in evaluating Nurse Hancik's opinions also constituted reversible legal error.
>
> Aplt. Br. at 19.
>
> As the Eighth Circuit recently recognized, "SSR 06-3p is a clarification of existing SSA policies." <u>Sloan v. Astrue</u>, 499 F.3d 883, 888 (8th Cir. 2007). Specifically, the "ruling clarifies how [the Commissioner] consider[s] opinions and other evidence from medical sources who are not 'acceptable medical sources.'" SSR 06-03p, 2006 WL 2329939 at *4. As explained in the ruling:
>
>> [The existing] regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 C.F.R. 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.
>
> <u>Id.</u> at *3.

In order to effectuate these policy considerations, the ruling states that disability "adjudicator[s] generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Id. at *6. In addition, the ruling makes it clear that

> an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

Id. at *5.[2]

[T]he Commissioner asserts that "the ALJ's decision was consistent with SSR 06-03p." Aplee. Br. at 16. According to the Commissioner:

> The ALJ summarized the medical records from [... Nurse Hancik] and noted the inconsistencies between [her] opinion and other evidence. For example, the ALJ noted the absence of work-related restrictions placed on Bowman from a treating source (Tr. 19, 21). The ALJ also pointed out the findings of the consultative examiner, [Dr. Metcalf,] which were inconsistent with the nurse's opinion (Tr. 19, 21).... This Court can easily follow the ALJ's reasoning in assessing the opinion of [Nurse Hancik]. Therefore, the Commissioner submits that the ALJ properly considered [her] opinion....

Id. at 17.

The question of whether the ALJ's evaluation of Nurse Hancik's opinion was consistent with SSR 06-03p is a close one. Given our determination that it is necessary to remand this case to the Commissioner for further proceedings with regard to the first issue raised by Ms. Bowman, we believe the best course of action is to direct the Commissioner to apply SSR 06-03p on remand and reconsider Nurse Hancik's opinion. See Frantz, 509 F.3d at 1302-03; Sloan, 499 F.3d at 889.

---

[2] Here, the Tenth Circuit inserted the following footnote: "Although SSR 06-03p recognizes the potential value of opinions from medical sources who are not acceptable medical sources, the ruling also points out that it is still necessary to distinguish between acceptable medical sources and other medical sources. This is necessary because [i]nformation from ... other [medical] sources cannot establish the existence of a medically determinable impairment. Further, only acceptable medical sources can give ... medical opinions and be considered treating sources ... whose medical opinions may be entitled to controlling weight." (quotation marks and citations omitted).

7

Id. at 1274-75.

The gist of plaintiff's argument is that the ALJ was required to evaluate her counselor's opinion in light of each of the six identified factors. The Tenth Circuit, in Bowman, did not make this statement. Rather, the court made clear that an ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Id. Here, the ALJ explained his basis for rejecting plaintiff's counselor's opinion, and the ALJ's discussion of the evidence allows the Court to follow his reasoning in doing so. There is no indication in Bowman that an ALJ's failure to expressly identify each of the six factors or to explicitly discuss each in light of the evidence is *per se* error. For these reasons, the Court rejects this argument.

Plaintiff next argues that the ALJ relied on "faulty evidence" in rejecting the opinion of her counselor. Plaintiff states that the evidence is faulty "because it is overwhelmed by other evidence." (Dkt. # 28 at 6). But the only "other evidence" plaintiff cites consists of her counselor's opinion and her GAF score. The ALJ discussed this evidence and discussed the evidence on which he relied, the latter discussion taking up several detailed paragraphs and specifically noting the findings of Robert S. Schlottman, Ph.D. and Burnard L. Pearce, Ph.D. (R. 306-09). It is the role of this Court to determine whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs, 248 F.3d at 1237; Winfrey, 92 F.3d at 1019; Castellano, 26 F.3d at 1028. The ALJ cited substantial relevant evidence; that is, such relevant evidence as a reasonable mind might accept as adequate to support his conclusion that plaintiff's counselor's opinion should not be

accepted as definitive. Richardson v. Perales, 402 U.S. 389, 401 (1971). The ALJ also applied the correct legal standard, as discussed above. Thus, this argument is rejected.

Third, plaintiff challenges the ALJ's credibility finding. An ALJ's credibility finding must be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished).[1] Nonetheless, an ALJ's credibility findings warrant particular deference, because he is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002). Also, although the ALJ should not ignore subjective complaints, he is not obligated to believe them. See Williams v. Bowen, 844 F.2d 748, 754-55 (10th Cir. 1988). The ALJ can look to objective indicators of pain such as attempts to find relief, use of medications, regular contact with doctors, and daily activities. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987).

The ALJ accurately set forth the relevant factors that he was to consider in assessing plaintiff's credibility. The ALJ also thoroughly discussed plaintiff's complaints and alleged symptoms. (R. 21-22, 305-06). He then tied his credibility finding to specific evidence and explained why plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (R. 22, 309). The ALJ noted that plaintiff's medication was effective in controlling her symptoms when she took it. (R. 308). See Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ also noted that Plaintiff's alleged symptoms were not consistent with the conservative treatment she had received. (R. 308, 309).

---

[1] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

Conservative treatment is a factor that the ALJ may consider when evaluating a claimant's credibility. See Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006).

The ALJ also discounted plaintiff's credibility for the reason that she failed to seek treatment at no-cost public facilities designed for persons who do not have insurance or an ability to pay. (R. 309, 329). The ALJ stated that it was "reasonable to assume that if the claimant were truly in need of medical care, she would exhaust every means possible to obtain such services." (R. 309). Moreover, at the time of her October 2008 hearing, plaintiff had not been to the Edwin Fair Medical Center for six months, merely because she had moved and did not want to start the intake process again. (R. 318). Thus, plaintiff provided no credible reason for not seeking free mental health treatment. The ALJ also noted plaintiff's testimony that her husband viewed her as "lazy." (R. 309, 323). The ALJ is entitled to consider such statements when evaluating a claimant's credibility. See Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006). Finally, plaintiff argues that the ALJ ignored her medication side effects, but plaintiff's application documents do not list any side effects, although they show that she took medications. (R. 89, 114, 121). In May 2004, plaintiff reported that her only side effect was increased appetite. (R. 187).

Based on the foregoing, the Court finds that the ALJ's credibility determination is supported by substantial evidence and is the result of the correct application of the applicable legal standards.

Fourth, plaintiff objects to the ALJ's Step Four determination, arguing that the ALJ failed to perform the last two phases of the three-phase analysis set forth in Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996). (Dkt. # 28 at 9). "In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he

must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Winfrey, at 1023.

Plaintiff agrees that the ALJ performed phase one, evaluating her physical and mental residual functional capacity. The ALJ addressed phases two and three together. As to phase two, the ALJ relied on the vocational expert's testimony that plaintiff's "past relevant work as a dishwasher is considered to be an unskilled, medium occupation, performed at the medium exertional level." (R. 309). In framing his hypothetical, the ALJ limited plaintiff to "simple repetitive tasks and incidental contact with the public." (R. 330-31). The ALJ explained to the vocational expert that plaintiff's contact with the public should be limited in the same manner as that "a maid might have in cleaning motel rooms, [bumping] into people who stayed in their rooms so she wouldn't have to deal with them on a regular basis." (R. 331). The ALJ then asked the vocational expert whether plaintiff's past relevant work as a dishwasher met this criteria. Id. The ALJ said that it did. Thus, the ALJ took into account the mental demands of plaintiff's past work.[3] In addition, defendant correctly notes that "unskilled work involves dealing primarily with objects, rather than data or people, and such jobs generally provide substantial vocational opportunity for a person with solely mental impairments." (Dkt. # 31 at 9) (citing Social Security Ruling 85-15).

As to phase three, the ALJ stated that he compared plaintiff's residual functional capacity with "the physical and mental demands" of plaintiff's past relevant work, concluding that plaintiff "is able to perform it as actually performed." The ALJ also asked the vocational expert

---

[3] In addition, contrary to plaintiff's argument in her Reply, the ALJ did take into account his Paragraph B findings in formulating plaintiff's RFC. (R. 305).

11

whether someone with plaintiff's impairments could perform her past work, and the vocational expert answered in the affirmative. The Court finds no error at phases two and three of the <u>Winfrey</u> analysis.

## **Conclusion**

Thus, the Court finds that the ALJ's opinion is supported by substantial evidence and that the correct legal standards were applied. The Court AFFIRMS the decision of the Commissioner.

SO ORDERED this 21st day of March, 2011.

_____
T. Lane Wilson
United States Magistrate Judge